IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**R. TODD STERLING,**  CASE NO. 3:24 CV 2063

    Plaintiff,

    v.  JUDGE JAMES R. KNEPP II

**MEADE AND ASSOCIATES, et al.,**

    Defendants.  **MEMORANDUM OPINION AND ORDER**

### BACKGROUND

This is a removed case brought by *pro se* Plaintiff R. Todd Sterling originally in the Allen County Court of Common Pleas. *See* Doc. 1; *Sterling v. Meade & Assocs. et al.*, Case No. CV-2024-0335 (Allen Cnty. Ct. of Comm. Pleas). In the "Amended Complaint for Money Damages" he filed in state court (the operative complaint for purposes of the pending motions, hereinafter "Complaint"), Plaintiff sues Defendants Emergency Physicians of Northwest Ohio ("EPNO"), Meade & Associates, Inc. ("Meade"), Synchrony Bank, Citi Bank, N.A. ("Citi Bank"), and the Fair Isaac Corporation ("FICO"). (Doc. 1-3).[1] The Complaint is somewhat rambling and unclear, and does not set forth cogent specific factual allegations or legal claims against each particular Defendant. But he seeks $590,000.00 in damages for violations of state and federal laws (including the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Federal Trade Commission Act ("FTCA")) on the apparent basis that Defendants caused him financial and emotional harm in connection with billing, debt collection, credit, and credit reporting activities. *See id.*

---

1. Plaintiff initially also sued Merrick Bank, but subsequently dismissed his action as against that Defendant. *See* Docs. 16, 24.

After the action was removed to federal court on the basis of Plaintiff's federal claims, Synchrony Bank, EPNO, and FICO each filed motions to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docs. 14 (Synchrony Bank)[2], 17 (EPNO), 23 (FICO). Citi Bank filed a Motion to Compel Arbitration. (Doc. 19).

On February 28, 2025, in response to the motions to dismiss, Plaintiff filed an "Amended Definite Statement" clarifying his claims. (Doc. 25). Plaintiff's Amended Statement does not set forth specific factual allegations, but it clarifies his legal claims against each Defendant. First, he asserts EPNO and Meade violated the FDCPA ("specifically under 15 U.S.C. § 1692e") by "initiat[ing] deceptive debt collection practices via various names" and "failing to properly validate the alleged debt and misrepresenting [his] liability." *Id.* at 2, ¶ 2(B).

Second, he states that Synchrony Bank and Citi Bank violated the FCRA and the FTCA on the basis they "engag[ed] in unfair acts that caused injury to [his] financial health" by "maliciously monitoring [his] credit without proper notification, utilizing soft pulls [of his credit report] to manipulate [his] financial standing and violating consumer rights." *Id.* at ¶ 2(C).

Third, he contends FICO engaged in an unfair trade practice under the FTCA and the Ohio Consumer Sales Practices Act ("OCSPA") by implementing a "credit scoring model that disproportionately penalizes minor infractions, such as a single late payment, without regard to overall payment history." *Id.* at ¶ 2(D).

FICO, EPNO, and Meade filed additional motions to dismiss based on Plaintiff's Amended Statement. Docs. 26 (FICO), 28 (EPNO), and 31 (Meade). On April 14, 2025, Plaintiff filed a response to all of Defendants' motions. (Doc. 32). With respect to Citi Bank's motion to compel, Plaintiff simply states he did not receive a copy of the motion and "reported . . . issues

---

2. Synchrony Bank's Motion seeks dismissal pursuant to Federal Civil Rule 12(b)(6) or, in the alternative, a more definite statement pursuant to Federal Civil Rule 12(e).

with the USPS system in Lima, Ohio[.]" *Id.* at 1. With respect to the motions to dismiss, he repeats his general complaints that his credit record is being monitored without his permission and that he has sustained financial harm as a result, and that he should be granted discovery to gather evidence to prove his allegations. *Id.* at 1-2.

For the following reasons, Defendants' pending motions to dismiss and to compel arbitration will be granted.

### STANDARD OF REVIEW AND DISCUSSION

<u>Motions to Dismiss</u>

The function of the Court in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When determining a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Unless facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 547. Further, to state a claim in federal court, the allegations in the complaint must be sufficient to give the defendants

"fair notice of what [the plaintiff's] claims [against them] are and the grounds upon which they rest." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

In addition, although *pro se* pleadings are generally entitled to a liberal construction and are held to less stringent standards than formal pleadings drafted by lawyers, the lenient treatment afforded to *pro se* plaintiffs "has limits." *See, e.g.*, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Even *pro se* complaints must satisfy the basic requirements of Rule 12(b)(6) to avoid dismissal. *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard set forth in *Iqbal* and *Twombly* applies to *pro se* complaints).

Upon review, the Court finds Defendants' pending motions to dismiss well-taken.

*Claims Against EPNO and Meade*

Plaintiff sues EPNO and Meade for violating § 1692e of the FDCPA, which prohibits a debt collector from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. But in order to establish a claim under § 1692e, a plaintiff must demonstrate that: (1) he is a "consumer" as defined by the Act; (2) the "debt" at issue must arise out of transactions which are "primarily for personal, family or household purposes"; (3) the defendant must be a "debt collector" as defined by the Act; and (4) the defendant must have engaged in act or omission prohibited by § 1692e. *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009). The absence of any factor is fatal to a plaintiff's claims. *See Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012).

Plaintiff has not alleged a plausible claim against EPNO because, as EPNO demonstrates in its motions to dismiss (Docs. 17, 28), Plaintiff has not identified facts plausibly suggesting that EPNO is a "debt collector" with the meaning of the Act. The term "debt collector" is defined in

4

the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "creditor," in contrast, is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed[.]" 15 U.S.C. § 1692a(4). The definition of a debt collector does not include "creditors." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). Nor can a creditor be held vicariously liable for the actions of a "debt collector." *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996).

At the most, Plaintiff's pleadings indicate EPNO is a "creditor" that provided emergency room services to Plaintiff for which it billed Plaintiff. Nothing in Plaintiff's pleadings plausibly suggest that EPNO is a "debt collector" or is engaged in a business whose principal purpose is the collection of debts for purposes of the FDCPA.

Plaintiff has also failed to allege facts sufficient to establish a plausible claim under the FDCPA against Meade, even if Meade is a "debt collector." As noted above, an essential element of a § 1692e claim is showing that a debt collector engaged in conduct prohibited by the FDCPA, such as by using harassing or abusive language, or making false or misleading representations as to the character, amount, or legal status of a debt. *See* 15 U.S.C. § 1692e(1)-(16).

Here, Plaintiff asserts, in purely conclusory and unadorned terms, that Meade and EPNO violated the FDCPA by "failing to properly validate [his] alleged debt and mispresent[ed] his liability" "via various names." (Doc. 25 at 2, ¶ 2(B)). Such vague and conclusory allegations are insufficient to state a claim under the FDCPA. *See, e.g.*, *Brody v. Genpact Servs., LLC*, 980 F. Supp. 2d 817, 821 (E.D. Mich. 2013) ("Insofar as plaintiff contends that defendant violated [the FDCPA] when it used 'false representation[s] or deceptive means' to collect the asserted debt,

such allegations are conclusory and insufficient to withstand a motion for judgment on the pleadings.") (citing *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 678-79).

*Claims Against Synchrony Bank and FICO*

Plaintiff has also failed to state any plausible claim against Synchrony Bank and FICO upon which he may be granted relief.

Plaintiff purports to sue FICO for violations of the FTCA and the OCSPA in connection with FICO's "credit scoring model." But, as FICO demonstrates in its motion (*see, e.g.*, Doc. 23, at 10-12), Plaintiff has no plausible claim under either law. "There is no private right of action under the FTCA, which vests initial remedial power solely in the Federal Trade Commission." *Fryer v. CitiFinancial, Inc.*, 2012 WL 592172, at *5 (S.D. Ohio) (internal quotation and citations omitted). And to state a claim under the OCSPA, a plaintiff must show a "transaction" involving the sale or lease of goods or services between a "supplier" and a "consumer." *See* Ohio Rev. Code § 1345.02(A); *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 265 (6th Cir. 2005). Nothing in Plaintiff's pleadings plausibly suggests FICO entered into a consumer transaction with Plaintiff in connection with its credit scoring model.

Plaintiff has no plausible claim against Synchrony Bank under the FTCA for the same reason it has no plausible claim against FICO: there is no private right of action under the FTCA. In addition, as Synchrony Bank persuasively demonstrates in its motion to dismiss (*see* Doc. 14, at 9-13), Plaintiff's unclear and purely conclusory allegations are insufficient to demonstrate Synchrony Bank engaged any unlawful conduct under the FCRA. To the extent Plaintiff contends Synchrony Bank unlawfully furnished inaccurate information about him, he fails to state a plausible claim. To bring a claim against a furnisher of information under the FCRA, a plaintiff must "show that the furnisher received notice from a consumer reporting agency, not the

plaintiff, that the credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853-54 (6th Cir. 2004) (citation omitted). Further, the plaintiff must show that upon receiving this notification, the furnisher of information acted unreasonably. *See* 15 U.S.C. §§ 1681s-2(b)(1). Plaintiff's pleadings do not plausibly suggest that he submitted a dispute to a credit reporting agency, that Synchrony Bank received notice of a dispute from a credit reporting agency, or that the Bank unreasonably failed to investigate or rectify a disputed charge. Accordingly, Plaintiff has alleged no plausible claim against the Bank under the FCRA relating to furnishing inaccurate information. *See Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 912 (S.D. Ohio 2013) (granting defendant's motion for judgment on the pleadings on plaintiff's FCRA furnishing claim).

Plaintiff's pleadings also fail to allege a claim under the FCRA to the extent he contends Synchrony Bank unlawfully "pulled" his credit report. To state such a claim, a plaintiff must "allege[], with sufficient factual support, that Defendant either willfully or negligently obtained [his] credit report without having a legitimate business purpose for doing so." *Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453, 461 (E.D. Va. 2009). Plaintiff has failed to proffer such allegations. He provides only conclusory assertions that Synchrony Bank unlawfully "pulled" his credit reports, without alleging facts sufficient to give rise to a plausible inference that the Bank accessed or pulled his credit report, at any time, without having a legitimate business purpose for doing so.

In short, for the foregoing reasons, Plaintiff has failed to state a plausible claim against the moving Defendants upon which he may be granted relief, and his complaint against them is subject to dismissal under Fed. R. Civ. P. 12(b)(6).[3]

Motion to Compel Arbitration

As noted, Citi Bank did not move to dismiss but instead seeks to compel arbitration of Plaintiff's claims against it on the basis of a binding arbitration agreement set forth in Plaintiff's credit card agreement. (Doc. 19). Although Plaintiff claims he did not receive a timely copy of the motion in the mail, he does not dispute the presence of a binding arbitration agreement or that his claims against Citi Bank fall within the scope of such agreement. Accordingly, Citi Bank's motion to compel arbitration will be granted. "It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants Emergency Physicians of Northwest Ohio, Meade and Associates, Inc., Synchrony Bank, and Fair Isaac Corporation's pending Motions to Dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Docs. 14, 17, 23, 26, 28, and 31) be, and the same hereby are, GRANTED, and this action is DISMISSED as against those moving Defendants; and it is

---

3. Although Plaintiff contends he should be granted discovery to obtain evidence to prove his claims, where, as here, a complaint is insufficient to meet the requirements established by *Iqbal* and *Twombly*, a case is not permitted to proceed to discovery. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

FURTHER ORDERED that Citi Bank's Motion to Compel Arbitration (Doc. 19) be, and the same hereby is, GRANTED, and Plaintiff is ordered to arbitrate any claims asserted in the instant case against Citi Bank; and it is

FURTHER ORDERED that this case is STAYED until the conclusion of any arbitration proceedings between Plaintiff and Citi Bank, and marked administratively CLOSED on the Court's docket; and it is

FURTHER ORDERED that the Court shall retain jurisdiction solely for the purpose of confirming, vacating, or correcting any arbitration award upon motion by either Plaintiff or Citi Bank at the conclusion of any arbitration proceeding; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: May 5, 2025